IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JASON WILLIAMS,

    Plaintiff,

      v.

INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION, LOCAL NO. 333, et al.,

    Defendants.

\*   Civil Action No.: RDB-06-1943

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Jason Williams ("Plaintiff") brought this action against two sets of Defendants (collectively "Defendants").[1] The Employer Defendants consist of P&O Ports of North America, Inc. ("P&O Ports"), Michael P. Angelos ("Angelos"), the Steamship Trade Association of Baltimore, Inc. ("STA"), and the STA-ILA Drug and Alcohol Abuse Program Committee ("STA-ILA Committee"). The Union Defendants consist of the International Longshoremen's Association Local No. 333 ("Local 333"), Horace Alston ("Alston") and John Shade ("Shade").[2] All eight counts of the Plaintiff's First Amended Complaint assert either that the Employer Defendants breached Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 or that the Union Defendants breached the duty of fair representation. Additionally, in Counts II,

---

[1] This case is related to another similar matter pending in this Court: *John Joseph Comi, Jr. v. International Longshoremen's Association, Local No. 333, et al,* RDB-06-2927. Mr. Comi has named in his suit the same two sets of Defendants that Plaintiff has named.

[2] Throughout this Memorandum Opinion, this Court will use the term "Defendants" when referring collectively to both sets of Defendants, and will use the terms "Employer Defendants" and "Union Defendants" when referring specifically to either group of Defendants.

IV, and VIII, Plaintiff also alleges that Defendants Alston and Shade breached their fiduciary duty to Plaintiff.

Pending before this Court is a Motion for Summary Judgment filed by the Employer Defendants (Paper No. 47.), and a second Motion for Summary Judgment filed by the Union Defendants. (Paper No. 49.)  The Defendants' pending motions pertain mainly as to whether Plaintiff's Section 301 and duty of fair representation claims are barred by the applicable statute of limitations. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004).  For the reasons stated below, the Employer Defendants' Motion for Summary Judgment (Paper No. 47) is GRANTED; the Union Defendants' Motion for Summary Judgment (Paper No. 49) is GRANTED as to Defendant Local No. 333, and GRANTED IN PART and DENIED IN PART as to Defendant Alston and Defendant Shade.

## BACKGROUND

This Court reviews the facts of this case in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Before June 2005, Plaintiff worked as a longshoreman at P&O Ports in the Port of Baltimore. During his employment at P&O Ports, Plaintiff was part of a bargaining unit represented by Local 333, a local affiliate of the International Longshoremen's Association ("ILA"). Defendants Alston and Shade are trustees of Local 333, serving in a temporary capacity while Local 333 is held in receivership by the ILA. P&O Ports is represented in collective bargaining and related matters by the STA, a multi-employer association that represents employers in the Port of Baltimore. Defendant Angelos is president of the STA, which is a signatory to a

collective bargaining agreement with Local 333. The STA-ILA Committee is a joint labor-management committee charged with administering the STA-ILA Program for Drug and Alcohol Abuse for the Port of Baltimore (the "2005 Drug Policy"), which includes P&O Ports. Alston, on behalf of Local 333, and Angelos, on behalf of the STA, sit on the STA-ILA Committee.

On October 1, 2004, STA and Local 333 entered into a collective-bargaining agreement (the "2004 Agreement") scheduled to expire on September 30, 2010. The 2004 Agreement contained a comprehensive drug policy (the "2004 Agreement Drug Policy"). According to Defendants, the STA and Local 333 implemented the 2005 Drug Policy on March 1, 2005 to supersede the 2004 Agreement Drug Policy.

Plaintiff argues that the 2005 Drug Policy significantly changed the 2004 Agreement Drug Policy in two major ways. First, Plaintiff argues that the 2005 Drug Policy ties penalties for drug use to seniority, thereby permitting the STA-ILA Committee to permanently ban an employee from the industry for life upon a first offense as long as the employee was in her or his first year of seniority under the 2004 Agreement.[3] Second, Plaintiff argues that the 2005 Drug Policy limits the grievance opportunities for the union members. The 2005 Drug Policy limits an

---

[3] Section XIII.A of the 2005 Drug Policy states as follows:

> Any temporary employee, or any employee not holding seniority with the seniority board under the Collective Bargaining Agreement or any employee within the first year of possessing seniority, who commits a first offense as defined below will be immediately terminated and permanently barred from the industry, including without limitation employment under any STA-ILA.

(Union Defs.' Ex. 6, 2005 Drug Policy.)

employee to an initial grievance with the STA-ILA Committee and, if a deadlock occurs, to resolution through final arbitration.[4]  These policy changes, Plaintiff argues, violate Local 333's Bylaws and the Constitution of the International Longshoremen's Association because they were not ratified by the members of Local 333.   Plaintiff also contends that the Union Defendants improperly suspended the "Walking Delegates," a union position that functioned much like a union steward on behalf of bargaining unit members.

On June 20, 2005, Plaintiff was involved in a workplace incident, the details of which are immaterial for resolution of the pending motion.  Immediately after the incident, P&O Ports insisted that Plaintiff undergo a required drug test, which Plaintiff in fact took on the same day as the alleged incident took place.  On June 23, 2005, test results indicated that Plaintiff tested positive for marijuana. (Union Defendants Ex. 9, Drug Test Results.)  Also on June 23, 2005, the STA-ILA Committee sent Plaintiff a letter that mistakenly claimed that Plaintiff failed to take a required drug test and that he was therefore suspended for sixty days.  On June 30, 2005, the STA-ILA Committee sent Plaintiff a second letter that also mistakenly claimed that Plaintiff

---

[4] Section XII.B of the 2005 Drug Policy states as follows:

> Any specific or individual disputes regarding application of Program or local administration are subject to the following two step procedure: (1) such disputes shall be resolved under the local grievance procedure, to wit: by the Port's Alcohol and Drug Abuse Committee; (2) if such disputes cannot be resolved under the local grievance procedure, they shall be referred to final arbitration on a "North Atlantic basis" before an arbitrator appointed under the Master Contract Program.

(*Id*.).  The 2004 Agreement Drug Policy, on the other hand, allowed an employee to file an initial grievance with the Seniority Board and, if a deadlock occurred, to appeal to the Trade Practices Committee.  Upon a second deadlock, the employee's case went to the Committee of Six.  Finally, upon a third deadlock, the employee's case would be resolved through final arbitration.

failed to take a required drug test, but which changed the punishment from a sixty-day suspension to a permanent suspension.  Also on June 30, 2005, Plaintiff received yet a third letter that accurately informed Plaintiff that he had tested positive for marijuana and was therefore permanently barred from the industry pursuant to the 2005 Drug Policy.

Several letters concerning Plaintiff's discharge were then sent between the parties' attorneys.  On July 28, 2005, Plaintiff's first attorney sent a letter to the STA-ILA Committee, in which he wrote that "we hereby file an appeal with this committee from the letter dated June 30, 2005."  (Union Defs.' Ex. 7, Anello Letter.)  Sometime in late summer or early fall, Plaintiff retained a second attorney, Kenneth A. Sprang.  On October 12, 2005, the attorney for Local 333, James R. Rosenberg, responded to Plaintiff's July 28, 2005 letter to the STA-ILA Committee and concluded as follows: "Under these circumstances, [Local 333] will not pursue a grievance on [Plaintiff's] behalf." (Union Defs.' Ex. 10, Rosenberg Letter.)

On November 9, 2005, Mr. Sprang wrote the following to Mr. Rosenberg:

> Many thanks for your letter advising me of . . . Local 333's position regarding pursuit of [Plaintiff's] grievance, and the copy of the [2005 Drug Policy].  I have now had an opportunity to meet with [Plaintiff], and am writing to respectfully request the Union to reconsider, and to fully process his grievance.  There are myriad of factors in [Plaintiff's] case that suggest he would prevail in arbitration.

(Pl's. Ex. B, Rosenberg Letter Nov. 9.)  In a second letter to Mr. Rosenberg sent on November 28, 2005, Mr. Sprang wrote that he "must be mindful of the . . . short statute of limitations for fair representation claims, and that clock is ticking.  If he chooses to do so, and if we need to file to preserve the statute, we can do that, but, of course, I would prefer not to."  (Union Defs.' Ex. 15, Sprang November 28 Letter.)  On November 30, 2005, Mr. Rosenberg responded by letter to

5

Mr. Sprang, writing that "[the STA-ILA Committee] is in the process of investigating the allegations in your November 9 letter. You will be notified of the results of this investigation upon its conclusion." (Pl's. Ex. C, Rosenberg Letter Nov. 30.)

Sometime in December 2005, Plaintiff filed two identical letters, one with the STA-ILA Committee pursuant to the 2005 Drug Policy, and the other with the Seniority Board pursuant to the 2004 Agreement Drug Policy. By letter dated January 31, 2006, the STA-ILA Committee affirmed Plaintiffs' termination and permanent ban from further employment.

On July 28, 2006, Plaintiff filed his Complaint in the pending matter against Employer Defendants P&O Ports, STA, and Angelos, and Union Defendants Local 333 and Alston, alleging breaches of the 2004 Agreement and the duty of fair representation. On August 31, 2006, the Employer Defendants filed a Motion to Dismiss or Alternatively for Summary Judgment. (Paper No. 8.) On September 8, 2006, the Union Defendants filed an Answer to Plaintiff's Complaint. (Paper No. 11.) On October 6, 2006, the Union Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (Paper No. 15.) On October 13, 2006, Plaintiff filed a Motion for Leave to Amend Complaint, (Paper No. 18), which this Court granted on November 14, 2006. (Paper Nos. 29, 30.) On November 15, 2006, the Plaintiff filed a First Amended Complaint and added Union Defendant Shade and Employer Defendant STA-ILA Committee.

On March 15, 2007, the Employer Defendants filed a Motion for Summary Judgment (Paper No. 47), and on the same day the Union Defendants filed a separate Motion for Summary Judgment. (Paper No. 49.) On April 23, 2007, Plaintiff filed separate oppositions to the Motions for Summary Judgment filed by the Employer Defendants (Paper No. 55) and the Union

Defendants (Paper No. 54). On June 6, 2007, the Employer Defendants filed a response to Plaintiff's opposition. (Paper No. 58.)

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. Fed. R. Civ. P. Rule 56(c). In *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (internal quotations omitted); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The opponent, however, must bring forth evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). After the moving party has demonstrated an absence of material fact, the opposing party has the obligation to present evidence demonstrating an issue of fact. *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005). Rule 56(e) also requires that "affidavits submitted by the party defending against a summary-judgment motion contain specific facts, admissible in evidence, from an affiant competent to testify,

7

'showing that there is a genuine issue for trial.'" *Id.* (quoting 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2740, at 399 (3d ed. 1998)).  The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is insufficient to preclude an order granting summary judgment.  *Anderson*, 477 U.S. at 252.

## DISCUSSION

**I.      Section 301 and Breach of Duty of Fair Representation Claims**

According to their submissions to this Court, the parties agree that Plaintiff has advanced what is known as a "hybrid claim," named as such because it comprises a claim against an employer for breach of a collective bargaining agreement under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and simultaneously against a union for breach of the duty of fair representation.  The parties also agree that the statute of limitations for a hybrid claim is governed by the National Labor Relations Act, 29 U.S.C. § 160(b), which states that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge."  *See DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 155 (1983) ("We conclude that § 10(b) should be the applicable statute of limitations governing [actions] against the employer and against the union.").  The dispositive issue with regard to Plaintiff's hybrid claim is limited to the narrow question of whether it is barred by the six-month statute of limitations.

**A.      Counts I, II, and IV**

Counts I and II allege that the Union Defendants and the STA-ILA Committee breached their duty of fair representation when they implemented and applied the 2005 Drug Policy.

Count IV alleges that the Union Defendants and the STA-ILA Committee violated the 2004 Agreement by failing to protect Plaintiff through any meaningful, effective means.[5]

This Court has previously recognized that the statute of limitations on a hybrid claim begins to run "'when the claimant discovers, or through the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.'" *Bruce v. International Longshoremen's Ass'n,* 7 F. Supp. 2d 609, 614 (D.Md. 1998), *aff'd*, 182 F.3d 907 (4th Cir. 1999) (quoting *McCreedy v. Local Union No. 971*, 809 F.2d 1232, 1236 (6th Cir. 1987)).

The statute of limitations on Plaintiff's duty of fair representation claim began to run, at the latest, on October 12, 2005. On that date, Local 333 replied to Plaintiff's attorney that "[u]nder these circumstances, [Local 333] will not pursue a grievance on [Plaintiff's] behalf." (Union Defs.' Ex. 10.) In *Linville v. United Auto Workers of America*, 415 F. Supp. 2d 656, 661 (S.D.W.Va. 2006), the court held that the statute of limitations began to run when the "union advised [the plaintiff] it would no longer pursue his grievance and it could not honor his request to have his seniority reinstated." Likewise, in *Ryder v. Philip Morris*, 946 F. Supp. 422, 426,

---

[5] Count IV has been read by the Court to allege against the Union Defendants a breach of the duty of fair representation. To the extent that Count V alleges that the Union Defendants breached the 2004 Agreement, Count IV fails to state a claim upon which relief can be granted. This Court has been unable to find a cause of action against a union for an alleged breach of the terms of a collective bargaining agreement.

Plaintiff alleges in Count IV that his rights under Section 7 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 147 were violated as a result of the Union Defendants' breach of the duty of fair representation. The exclusive avenue for redress for an alleged unfair labor practice under the NLRA is with the National Labor Relations Board, *see San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959), and therefore Plaintiff's allegations on this ground fail to state a claim upon which relief can be granted.

Plaintiff also alleges in Count IV that Defendant Alston breached his fiduciary duty. This claim will be addressed below.

428 (E.D. Va. 1996), the court held that statute of limitations began to run no later than the date in which the plaintiff "received a telephone call from . . . a member of the Union Committee . . . that informed [the plaintiff] that the Union Committee had voted against arbitrating [the plaintiff's] grievance."[6]  In both cases, the statute of limitations began to run when the union member was clearly advised that his claim would not be taken further by the union, thus giving rise to a duty of fair representation claim.  In this case, therefore, Local 333's unequivocal position that it would not pursue Plaintiff's grievance gave rise to a potential duty of fair representation claim, and therefore triggered the six-month statute of limitations.

Plaintiff's argument that he first became aware that Local 333 would take no further action on his behalf on January 31, 2006, when the STA-ILA Committee sent a letter to Plaintiff's attorney, Mr. Sprang, is without merit.  Plaintiff argues that the January 31, 2006 letter was the earliest date upon which Local 333 could make such a decision because the December 2005 letter was his first formal grievance.  In other words, "[Local 333] could not pursue a grievance nor take a grievance to arbitration until [Plaintiff] had actually filed one." (Pl.'s Resp. to Union Defs. at 14.)

Despite Plaintiff's post hoc characterizations, Plaintiff's attorney and Plaintiff himself both treated the July 28, 2005 letter as a grievance before commencing litigation.  For instance, Plaintiff's attorney understood that the October 12, 2005 letter was in response to a formal

---

[6] The law in other circuits is the same.  *See, e.g., McCreedy v. Local Union No. 971*, 809 F.2d 1232, 1236 (6th Cir. 1987) ("[E]mployee's hybrid cause of action may arise when the union takes an unequivocal position that it will not seek arbitration."); *McLinn v. Boeing Company*, 715 F. Supp. 1024, 1029-30 (D.Ka. 1989) ("In a wrongful termination case, the hybrid action generally accrues when the employee learns or receives notice that the union has refused or neglected to assist him or has decided not to pursue his grievance to the next step for processing.").

grievance. In a detailed November 9, 2005 letter, Plaintiff's attorney "respectfully request[ed] that [Local 333] reconsider, and . . . fully process [Plaintiff's] grievance." (Pl's. Ex. B.) In the same letter, Plaintiff's attorney also plainly acknowledged the potential duty of fair representation claim, as he wrote that "it is my professional judgment that [Local 333]'s failure to assure [Plaintiff] his right to be treated fairly and correctly under the policy breaches the duty of fair representation." (*Id*. at 4.) Moreover, in his second letter to Local 333 on November 28, 2005, Plaintiff's attorney acknowledged that the statute of limitations was already running on the duty of fair representation claim by writing that he "must be mindful of the . . . short statute of limitations for fair representation claims, and *that clock is ticking*." (Union Defs.' Ex. 15 (emphasis added).) In sum, Plaintiff's attorney requested that Local 333 reconsider its decision not to pursue a grievance, referred to a possible breach of the duty of fair representation, and acknowledged that the "short statute of limitations" was running.

Plaintiff also recognized the July 28, 2005 letter as a grievance. He previously testified that "[m]y attorney at that time was Salvatore Anello, who wrote a letter to the [STA-ILA] Committee . . . *grieving my suspension and discharge on July 28, 2005.*"[7] (Union Defs.' Ex. 12, Aff. of Jason Williams (emphasis added).) Plaintiff was therefore aware of the Union Defendants' alleged breach at the latest on October 12, 2005. On that date, Plaintiff was made unequivocally aware that Local 333 would not take his claim any further. In light of this undisputed evidence, Plaintiff's hybrid claim accrued for the purposes of the statute of

---

[7] Plaintiff's statements were made in connection with an unfair labor practice charge he filed with the National Labor Relations Board ("NLRB"), captioned as *International Longshoreman's Assn, Local 333*, Case No. 5-CB-9974. The charge was based on the same alleged facts as in the instant matter, but was withdrawn on July 6, 2006. The Union Defendants received the partially redacted affidavit by way of a Freedom of Information Act request filed with the NLRB.

limitations on October, 12, 2005, and therefore should have been filed no later than April 12, 2006. Plaintiff's suit, which was filed on July 28, 2006, is therefore time-barred.

Therefore, the Employer Defendants' Motion for Summary Judgment (Paper No. 47) and the Union Defendants' Motion for Summary Judgment (Paper No. 49) are GRANTED as to Count I and also to Counts II and IV insofar as they allege that the Union Defendants breached their duty of fair representation.

**B.      Count III**

Count III of Plaintiff's First Amended Complaint is titled "Breach of the Duty of Fair Representation," but in substance it alleges that the Employer Defendants breached the 2004 Agreement by implementing the 2005 Drug Policy and by failing to contact a union representative for Plaintiff. Plaintiff received a termination letter on June 30, 2005 that clearly informed him that he was being permanently suspended pursuant to Section XIII.A, the precise provision of the 2005 Drug Policy that Plaintiff now alleges was improperly implemented in violation of the 2004 Agreement.[8] Moreover, on October 12, 2005, the STA-ILA Committee again referenced the same provision when restating the reasons for Plaintiff's termination.

Plaintiff was aware, or should have been aware, of the Employer Defendants' alleged breach, *i.e.* the implementation and application of the 2005 Drug Policy, no later than October 12, 2005. Therefore, the Employer Defendants' Motion for Summary Judgment (Paper No. 47) and the Union Defendants' Motion for Summary Judgment (Paper No. 49) are GRANTED as to Count III.

---

[8] Plaintiff contends that he never received a copy of the 2005 Drug Policy, which was instituted on March 1, 2005. (Pl.'s Resp. to Union Defs. at 4.) Although the Union Defendants claim he did in fact have a copy, this dispute is immaterial because this Court finds that Plaintiff became aware or should have become aware of the policy at the latest on October 12, 2005, over seven months after the 2005 Drug Policy was instituted.

### C. Counts V and VI

Count V of Plaintiff's First Amended Complaint alleges that Local 333 breached its duty of fair representation by misleading Plaintiff regarding actions allegedly taken on Plaintiff's behalf following the termination of his employment. Count VI alleges that the Union Defendant Local 333 breached its duty of fair representation by refusing to process Plaintiff's grievance after his termination.

Plaintiff argues that even if the statute of limitations began running on October 12, 2005, it should be tolled for one of two reasons. First, Plaintiff argues that "[i]t is hornbook law that an individual cannot commence a hybrid duty of fair representation claim unless he/she has first exhausted all internal remedies." (Pl.'s Resp. to Union Defs. at 16.) According to Plaintiff, his remedies were not exhausted on October 12, 2005. Second, Plaintiff argues that the statute of limitations should be tolled under the interrelated doctrines known as equitable tolling and equitable estoppel.

#### 1. Exhaustion of Internal Remedies

The United States Court of Appeals for the Fourth Circuit has recognized that "before an employee may bring a suit against his employer for breach of a collective bargaining agreement, the employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." *Trent v. Bolger*, 837 F.2d 657, 659 (4th Cir. 1988) (citing *Clayton v. International Union*, 451 U.S. 679 (1981)). The 2005 Drug Policy permitted Plaintiff to file a grievance with the STA-ILA Committee, a procedure which was exercised by Plaintiff in the July 28, 2005 letter. The grievance is taken further only if the "dispute cannot be resolved under the local grievance procedure." (Union Defs.' Ex. 6.) The October 12, 2007 letter, which informed Plaintiff that no further action would be taken on his behalf, exhausted his internal

remedies.

Any additional communications between Plaintiff and Defendants were not part of a formal internal procedure, but instead were informal communications of the kind discussed in *Coppage v. United States Postal Service*, 281 F.3d 1200 (11th Cir. 2002). In *Coppage*, the United States Court of Appeals for the Eleventh Circuit explained as follows:

> [The plaintiff's] attorney cannot toll the statute of limitations simply by writing letters to the Union protesting the binding final settlement of [the plaintiff's] grievance. Allowing an attorney to toll the statute of limitations in such a manner would undermine the purpose of statutes of limitations, which is to require the 'prompt presentation of claims.'

*Id.* at 1206 (quoting *United States v. Kubrick*, 444 U.S. 111, 117 (1979)). The United States Court of Appeals for the Fourth Circuit has also adopted this well-reasoned policy. *See Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991) (explaining that the statute of limitations cannot be extended "indefinitely" by "'bombarding [the] union with tiresome requests for needless review'" (quoting *Dozier v. Trans World Airlines Inc.*, 760 F.2d 849, 852 (7th Cir. 1985)). *See also Linville*, 415 F.Supp.2d at 662-63 (stating that the "statute of limitations would be entirely under the control of a plaintiff who could indefinitely delay the resolution of the dispute simply by continually making informal requests that the union revisit its decision").

In this case, Plaintiff sent two letters to Defendants after having already received the October 12, 2005 letter from Defendants that clearly stated that Local 333 would not bring any action on his behalf. On November 9, 2005, Plaintiff's attorney wrote his first letter acknowledging "Local 333's position regarding pursuit of [Plaintiff's] grievance," but requesting that "the Union reconsider, and . . . fully process his grievance." (Pl.'s Ex. B.) The second letter requested a status of the review and stated that the "clock is ticking." (Union Defs.' Ex. 15.)

Because these communications were "simply a general appeal for help, not the invocation of a formal union procedure," they do not act to toll the statute of limitations. *Ryder*, 946 F. Supp. at 433 (quoting *Pantoja v. Holland Motor Exp., Inc*., 965 F.2d 323, 328 (7th Cir. 1992)).

### 2.     Equitable Tolling and Equitable Estoppel

The Fourth Circuit explained the principles of equitable tolling and equitable estoppel in *C.M. English v. Pabst Brewing Company*, 828 F.2d 1047 (4th Cir. 1987), where the court wrote that:

> Equitable exceptions to the statutory limitations period should be sparingly applied . . . .  The certainty and repose these provisions confer will be lost if their application is up for grabs in every case.
> The doctrines of equitable tolling and equitable estoppel have a common origin; they are based primarily on the view that a defendant should not be permitted to escape liability by engaging in misconduct that prevents the plaintiff from filing his or her claim on time . . . .
> Equitable tolling applies where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action . . . .  To invoke equitable tolling, the plaintiff must therefore show that the defendant attempted to mislead him and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge . . . . .
> Equitable estoppel applies where, despite the plaintiff's knowledge of the facts, the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline . . . . 'The statute of limitations will not be tolled on the basis of equitable estoppel unless the employee's failure to file in timely fashion is the consequence either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.'

*Id.* at 1049 (citations omitted).

Plaintiff points to the November 30, 2005 letter sent by the Defendants, which stated that the "[the STA-ILA Committee] is in the process of investigating the allegations." (Pl's. Ex. C, Rosenberg Letter Nov. 30.)  As in *Ryder*, that Plaintiff "may have misunderstood the import of

[Defendant's] voluntary assistance does not justify a finding of equitable tolling, which is based on the wrongdoing of the [D]efendant." *Ryder*, 946 F. Supp. at 434 (internal quotations omitted). Plaintiff has not alleged any evidence suggesting that Defendants "wrongfully deceived or misled" him. *Id.* Nor has Plaintiff alleged any evidence that Defendants engaged in "intentional misconduct to cause the [P]laintiff to miss the filing deadline." *C.M. English*, 828 F.2d at 1050. In short, the principles of equitable tolling and equitable estoppel have no application to the facts of this case.

Because Plaintiff's hybrid claim accrued no later than October 12, 2005, and neither of the tolling theories advanced by Plaintiff apply in this case, the Employer Defendants' Motion for Summary Judgment (Paper No. 47) and the Union Defendants' Motion for Summary Judgment (Paper No. 49) as to Counts V and VI are GRANTED.

**D.     Count VII**

Count VII of Plaintiff's First Amended Complaint alleges that the Union Defendants breached the duty of fair representation by suspending the "Walking Delegate," a role, according to Plaintiff, that was intended to provide assistance to an aggrieved employee during the grievance process. This claim is also time-barred because Plaintiff should have learned that the "Walking Delegate" was unavailable to him while his grievance was being processed. Therefore, the Employer Defendants' Motion for Summary Judgment (Paper No. 47) and the Union Defendants' Motion for Summary Judgment (Paper No. 49) are GRANTED as to Count VII.

**E.     Count VIII**

In Count VIII, Plaintiff argues that the Union Defendants violated their duty of fair representation by implementing the 2005 Drug Policy on March 1, 2005, and that this breach "has continued at all relevant times herein, and continues to the present date." (Pl.'s First Amended

16

Complaint, ¶ 90.) If this were true, the statute of limitations would never bar Plaintiff's claim as long as the 2005 Drug Policy is in place. This is clearly against the salutary federal policy of resolving labor disputes promptly, *see DelCostello*, 462 U.S. at 168, as well as the purpose of a statute of limitations, which is to require the "prompt presentation of claims." *Coppage,* 281 F.3d at 1206 (internal quotations omitted). Therefore, this Court will not adopt Plaintiff's "continuing violation" theory and the Employer Defendants' Motion for Summary Judgment (Paper No. 47) and the Union Defendants' Motion for Summary Judgment (Paper No. 49) are GRANTED as to Count VIII.

**II.     Breach of Fiduciary Duty** – **Counts II, IV, and VIII**

In Counts II, IV, and VII, Plaintiff alleges that Defendants Alston and Shade breached their fiduciary duty to Plaintiff and other union members for various acts committed during their temporary roles as trustees of Local 333. The Union Defendants have not addressed this aspect of Plaintiff's First Amended Complaint, and this Court cannot find definitively that there are no genuine issues of material fact as to Plaintiff's First Amended Complaint. Moreover, with respect to the statute of limitations, it is clear that a claim for a breach of fiduciary duty is not governed by the six-month statute of limitations applicable to hybrid claims under *DelCostello*, 462 U.S. at 155. Instead, an alleged breach of fiduciary duty is governed by the Maryland statute of limitations generally applicable to civil actions, which states that "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Md. Code Ann., Cts. & Jud. Proc. § 5-101. Maryland courts have adopted the "discovery rule," which provides that a "cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong." *Poffenberger v. Risser*, 431 A.2d 677, 680 (Md.1981).

Therefore, because the claim has not been addressed by the Defendants and is clearly not barred by the applicable statute of limitations, the Union Defendants' Motion for Summary Judgment (Paper No. 49) is DENIED as to Counts II, IV, and VIII insofar as they allege that Defendant Shade and Defendant Alston breached their fiduciary duty to Plaintiff.[9]

## **CONCLUSION**

For the reasons stated above, the Employer Defendants' Motion for Summary Judgment (Paper No. 47) is GRANTED and the Union Defendants' Motion for Summary Judgment (Paper No. 49) is GRANTED IN PART and DENIED IN PART. A separate Order follows.

/s/
Richard D. Bennett
United States District Judge

Date: November 30, 2007

---

[9] By separate Order accompanied by a Memorandum Opinion, this Court will consolidate the remaining Counts in this case with a factually similar case against the same Defendants, *Comi v. International Longshoremen's Association, Local No. 333, et al,* RDB-06-2927, for the purposes of discovery.